COMET SYSTEMS, INC. SHARE-HOLDERS' AGENT, and James Rosen, Thomas Schmitter and Douglas Stern, Individually and in their capacities as all of the members of the Comet Systems Inc. Shareholders' Agent, Plaintiffs,

v.

MIVA, INC., f/k/a FindWhat.com, a Florida Corporation, Defendant.

C.A. No. 2793–VCL.

Court of Chancery of Delaware.

Submitted: July 31, 2008.
Decided: Oct. 22, 2008.

---

8. *Czech v. State,* 945 A.2d 1088 (Del.2008); *Tucker v. State,* 564 A.2d 1110 (Del.1989).

9. *Czech v. State,* 945 A.2d 1088 (Del.2008).

10. *Id.*

11. *Id.*

Kurt M. Heyman, Esquire, Patricia L. Enerio, Esquire, Proctor Heyman LLP, Wilmington, Delaware; Stephen M. Kramarsky, Esquire, Dewey Pegno & Kramarsky LLP, New York, New York, Attorneys for the Plaintiffs.

Kevin R. Shannon, Esquire, Michael A. Pittinger, Esquire, Abigail M. LeGrow, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for the Defendant.

### OPINION

LAMB, Vice Chancellor.

This breach of contract case arises out of a dispute between the former stockholders of a software company and a successor entity which purchased that company over the interpretation and performance of the earnout provisions of the merger agreement in which those stockholders were bought-out. The former stockholders have moved for partial summary judgment as to the first count of their verified complaint, and the purchasers have cross-moved for summary judgment on all counts.

The central issue presented by these motions is whether a change-of-control bonus paid to the employees of the target corporation prior to the closing of the merger is a "one-time, non-recurring expense" that should be excluded from the target's costs for the purpose of computing the earnout. If the bonus payment is excluded from the cost calculation, the former stockholders will be entitled to an additional payment of approximately $1.67 million under the earnout. The court finds that this is a pure question of law, on which the former stockholders are entitled to summary judgment. The court also concludes that, as a result of a delay in payment, the former stockholders are entitled to an award of interest on the portion of the earnout they already received, as well as on the portion which the court finds they should have gotten.

## I.

### A. *The Parties*

Comet Systems, Inc. was a Delaware corporation prior to its merger into a wholly-owned subsidiary of MIVA, Inc. Comet Systems, Inc. Shareholders' Agent is an unincorporated entity consisting of pre-merger Comet shareholders James Armstrong, James Rosen, Thomas Schmitter, and Douglas Stern, all of whom are named plaintiffs in this case. The Comet Shareholders' Agent was formed by action of the pre-merger Comet shareholders, is empowered by the pre-merger Comet shareholders, and recognized by the merger agreement as the appropriate party to take such actions as are necessary to protect the rights of the pre-merger Comet shareholders under the merger agreement.

Defendant MIVA, Inc. is a Delaware corporation, with its principal executive of-

fices in Fort Myers, Florida. MIVA is the legal successor corporation to FindWhat.com, a party to the merger agreement and the parent entity to the corporation into which Comet was merged.

### B. *Facts*

Comet, a provider of "connected desktop software," was founded in 1997 by, among others, James Rosen and Thomas Schmitter. In June 2003, apparently anticipating a potential merger or sale of the corporation, Comet set up a company-wide bonus plan which would pay out to the employees of Comet solely in the event of an acquisition or similar transaction. This merger bonus plan designated that the bonus compensation would be calculated as a percentage of the merger proceeds, and paid out of such proceeds.[1] Comet was acquired by FindWhat.com on or about March 22, 2004, pursuant to the merger agreement dated February 23, 2004 among FindWhat.com,[2] Haley Acquisition Corp., a wholly owned subsidiary of FindWhat.com, and Comet. As a result of that sale, Comet paid out to its employees, pursuant to the merger bonus plan, a total of approximately $800,000, or 3.45% of the merger proceeds. The deal consideration paid to the Comet shareholders consisted of three parts: an immediate cash component, stock in FindWhat.com (to be paid out only to certain Comet shareholders), and an earnout to be calculated on the basis of Comet's performance against several metrics over the years 2004 and 2005. The earnout, as described in Exhibit C to the merger agreement, was to pay out a maximum of $10 million, half of which could be earned for meeting the performance targets specified in each of 2004 and 2005. In each year, the payout was based on Com-

---

1. This plan was later amended in December 2003, and again pursuant to § 5.3(h) of the Merger Agreement, to cap the payout under the plan at $1 million.

2. Later renamed MIVA, Inc.

et's performance relative to three performance goals, with each goal worth one-third of the total possible earnout compensation for that year. Thus each goal was worth a maximum of $1.67 million in each year, and a total of $5 million in earnout compensation was possible in each of 2004 and 2005. Achievement of a portion of a given goal would result in a *pro rata* payout on that goal, down to an absolute cutoff level of 66%, below which no payout would result on that goal.

The performance goals consisted of a User Base Goal, a Revenue Goal, and a Cost Goal.[3] The 2004 User Base Goal was based on achieving a cumulative monthly total number of English language "Genesis" users of 50,350,692 for the year ending December 31, 2004. The 2004 Revenue Goal was based on Comet generating average revenue of $0.363 per English language "Genesis" user for 2004. As a threshold condition to any payout on the Revenue Goal, the 2004 revenue per user had to exceed the 2004 cost per user (defined in the merger agreement as "Operating Costs Excluding Amortization and One-time, Non-recurring Expenses") by at least $0.03 (the difference between the revenue per user and the cost per user defined above constituting the 2004 "profit per user"). The 2004 Cost Goal was based on achieving an average cost per English language "Genesis" user of $0.245 in 2004. As a threshold condition to any payout on the Cost Goal, the 2004 profit per user had to be at least $0.06.

On March 16, 2005, MIVA reported in its annual 10–K filing with the Securities and Exchange Commission ("SEC") that approximately $1.1 million of the $5 million allocated to the 2004 portion of the Comet earnout had in fact been earned by Comet.

In early 2006, MIVA delivered to the Comet Shareholders' Agent a one-page spreadsheet entitled "Calculation of MIVA Direct Earnout."[4] According to this spreadsheet, MIVA calculated that $1.67 million of the potential $5 million allocated for 2005 had been earned. The spreadsheet showed that all of the $1.1 million MIVA calculated as owing under the earnout for 2004 resulted from achievement of 67.7% of the 2004 User Base Goal. For the 2004 Revenue Goal, it showed that Comet had achieved 108.8% of its target revenue, but that profit per user was $0.014, resulting in a zero payout on that goal. As for the 2004 Cost Goal, the spreadsheet showed a zero payout both because the profit per user was below the $0.06 required threshold for payout, and because Comet had only reached 64.2% of its target on the goal, and was therefore below the 66% absolute cutoff. In calculating the cost per user that drove the profit per user threshold calculations for both the Revenue and Cost Goals, MIVA included the $800,000 payout to Comet's employees under the merger bonus plan—that is, MIVA treated the merger bonus payment as an operating expense not excluded as "one-time" and "non-recurring." MIVA, in purported satisfaction of its obligations under the earnout, paid approximately $2.7 million to the Comet shareholders in June 2006.

## C. *Procedural History*

The Comet Shareholders' Agent, and its four members in their individual capacities as former Comet shareholders, filed a complaint in this court on March 13, 2007 alleging four counts. In Count I, the plaintiffs allege that MIVA breached the merger agreement by not excluding the merger bonus payment from its calculation of cost per user. This alleged failure to

---

**3.** There is no dispute between the parties regarding the correct value of the payout of the 2005 performance goals.

**4.** The 2005 payout value was also confirmed by MIVA's 10–K filing with the SEC on March 16, 2006.

properly account for the merger bonus payment resulted in decreasing the 2004 profit per user below the $0.03 threshold, thereby precluding payout on the 2004 Revenue Goal. Comet alleges it achieved 100% of its 2004 Revenue Goal and is entitled to an additional $1,666,500. Count II alleges that MIVA improperly calculated (in an unspecified manner) the cost per user and profit per user for the 2004 Cost Goal. Comet alleges that proper calculation entitles shareholders to an additional payment in excess of $1.1 million. Count III alleges a breach of contract on the part of MIVA in delaying the issuance of the 2004 and 2005 performance payments until June 2006, and seeks interest for the amounts owed during the alleged delay. Count IV, which the court dismissed at the July 30, 2008 hearing, pleads in the alternative a claim for unjust enrichment to the extent that the merger agreement is determined to be unenforceable.

MIVA filed its answer on May 7, 2007. Comet filed a motion for partial summary judgment on Count I on December 18, 2007, and MIVA filed its cross-motion for summary judgment as to all counts on April 8, 2008. Notably, no fact discovery took place, nor was any attempted by either party. The court heard oral arguments on the cross-motions for summary judgment on July 31, 2008.

## II.

The legal standard for cross-motions for summary judgment is well settled. To prevail, each party must show that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[5] Where the parties have filed cross-motions for summary judgment and neither party has argued that there is an issue of material fact, the cross-motions are deemed to be a stipulation for a decision based on the submitted record.[6] However, even when presented with cross-motions, a court must deny summary judgment if a material factual dispute exists.[7] The court must view the facts in the light most favorable to the nonmoving party.[8] The moving party bears the burden of demonstrating that there is no material question of fact.[9] "A party opposing summary judgment, however, may not merely deny the factual allegations adduced by the movant."[10] "If the movant puts in the record facts which, if undenied, entitle him to summary judgment, the burden shifts to the defending party to dispute the facts by affidavit or proof of similar weight."[11] Summary judgment will not be granted when the record reasonably indicates that a material fact is in dispute or "if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[12]

## III.

Comet asserts that the meaning of the merger agreement is clear and unambiguous, and that the merger bonus payment

5. Ct. Ch. R. 56(c); *see also Acro Extrusion Corp. v. Cunningham,* 810 A.2d 345, 347 (Del. 2002); *Williams v. Geier,* 671 A.2d 1368, 1375 (Del.1996).

6. Ct. Ch. R. 56(h).

7. *Fasciana v. Elec. Data Sys. Corp.,* 829 A.2d 160, 166–67 (Del.Ch.2003) (citing *Empire of Am. Relocation Servs., Inc. v. Commercial Credit Co.,* 551 A.2d 433, 435 (Del.1988)).

8. *Tanzer v. Int'l Gen. Indus., Inc.,* 402 A.2d 382, 385 (Del.Ch.1979) (citing *Judah v. Delaware Trust Co.,* 378 A.2d 624, 632 (Del.1977)).

9. *Id.*

10. *Tanzer,* 402 A.2d at 385.

11. *Id.*

12. *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

properly should have been excluded from the 2004 cost per user calculation because it was a "one-time, non-recurring expense." MIVA agrees that the merger agreement is unambiguous, but disagrees that the merger bonus payment qualifies as a "one-time, non-recurring expense" and therefore was properly included in the 2004 cost per user calculation. Both parties agree that Count I turns on the court's interpretation of the phrase "one-time, non-recurring expense." For the reasons discussed below, the court finds that the merger agreement is, in fact, unambiguous, and MIVA should have excluded the merger bonus payment from its cost per user calculation.

■ The "determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law."[13] Summary judgment is an appropriate process for the enforcement of unambiguous contracts because there is no material dispute of fact for the court to resolve.[14] Contractual terms are "not rendered ambiguous simply because the parties in litigation differ"[15] concerning their meaning, nor because the parties simply "do not agree upon [their] proper construction."[16] Rather, a contract term is ambiguous "only when the provisions in controversy are reasonable or fairly susceptible of different interpretations or may have two or more different meanings."[17] Therefore, the court's analysis is initially focused "solely on the language of the contract itself. If that language is unambiguous, its plain meaning alone dictates the outcome."[18]

■ The court's analysis of contractual provisions "is guided by the 'elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract.'"[19] In undertaking this analysis, "Delaware adheres to the 'objective' theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party."[20] Therefore, "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[21]

■ Both parties agree that the term "one-time, non-recurring expenses" is unambiguous. They nevertheless disagree as to what the term means with respect to the merger bonus payment. MIVA argues that "one-time, non-recurring expenses" should not be read to encompass the merger bonus payment because of the following "contextual facts": (1) Comet paid out other bonuses in the past; (2) Comet treated prior bonuses as normal operating costs;

**13.** *NBC Universal, Inc. v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del.Ch.) (citing *Pellaton v. The Bank of New York*, 592 A.2d 473, 478 (Del.1991); *Reardon v. Exch. Furniture Store*, 188 A. 704, 707 (Del.1936)).

**14.** *NBC Universal*, 2005 WL 1038997 *5.

**15.** *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

**16.** *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

**17.** *Id.*

**18.** *Chambers v. Genesee & Wyo. Inc.*, 2005 WL 2000765, at *5 (Del.Ch.) (citing *Pellaton*, 592 A.2d at 478).

**19.** *In re IAC/InterActive Corp.*, 948 A.2d 471, 494 (Del.Ch.2008) (quoting *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del.1992)).

**20.** *NBC Universal*, 2005 WL 1038997, at *5 (citing *Cantera v. Marriott Senior Living Serv., Inc.*, 1999 WL 118823, at *4 (Del.Ch.)).

**21.** *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997).

(3) bonuses are common in the technology industry (to which Comet belongs); (4) the purpose of the bonus plan was to retain and incentivize Comet's employees, which is the common purpose for such bonuses; (5) after the consummation of the merger, the continuing employees of Comet were eligible to and did receive bonuses from the MIVA bonus pool. Ultimately, MIVA's argument is unconvincing.

MIVA's contention essentially amounts to a characterization of the merger bonus payment as an ordinary cost of business, as acquisition bonuses contribute to employee retention during the sale process, and thus to the company's revenue generation. But the fact that an expense qualifies as an ordinary cost of business does not preclude treatment of that expense as one-time and non-recurring. *Black's Law Dictionary* defines a "one-time charge" as "[a]n ordinary cost of business excluded from income calculations."[22] Thus, simply qualifying a cost as ordinary is not sufficient to dispositively determine that the cost is not one-time and non-recurring.

A closer look at the purpose for which the "one-time, non-recurring expense" exclusion is being applied—the calculation of an earnout payment—is instructive. Earnouts are typically used where the buyer and seller cannot agree on a price because the seller is more optimistic about the future prospects of a business than is the buyer.[23] As a result, charges and costs which occur as a result of the merger and are not expected to be representative of future costs in the business are reasonably excluded.[24] The natural reading of "one-time, non-recurring expenses" is to exclude exactly such charges.[25] It may be that Comet paid out bonuses in the past, and that the merger bonus served the same metaphysical purpose—to retain employees. But, unlike Comet's normal bonuses, the merger bonus was designed for an entirely different reason. It was not to compensate the employees for their revenue generating work, but to compensate them for bearing the risk of job-loss and dislocation that often accompanies a corporate acquisition. This is a risk the employees would not have faced but for the sale process, and no payout to them would have been required under the merger bonus plan if not for the consummation of the merger.[26]

---

**22.** BLACK'S LAW DICTIONARY 284 (8th ed. 2004) (defining "special charge," which BLACK'S treats as synonymous with "one-time charge"); *see* BLACK'S LAW DICTIONARY 1122 (8th ed. 2004).

**23.** *Structuring and Negotiating Earn-outs,* 1676 PLI/Corp 909, at *911 (May–June 2008).

**24.** *Cf.* Clearwire Corp., Preliminary Proxy Statement (Form PRER14A), at 148–49 (Aug. 22, 2008) (disclosing under the heading "Non-recurring Charges" that as a result of the proposed merger that "accelerated vesting of certain members of management's stock options results in a *one-time charge* of approximately $44.9 million," (emphasis added) but not including that charge in the pro forma financial statements because it is not expected to have "continuing impact on the results of operations").

**25.** *Cf. NBC Universal, Inc.,* 2005 WL 1038997, at *9 ("Words in a contract are interpreted using their common and ordinary meaning, unless the contract clearly shows that the parties' intent was otherwise.") (citing *Northwestern Nat'l Ins. Co. v. Esmark, Inc.,* 672 A.2d 41, 44 (Del.1996); *Neary v. Philadelphia, W. & B.R. Co.,* 9 A. 405, 407 (Del.1887)).

**26.** Although not strictly relevant, since extrinsic evidence is not to be considered when construing an unambiguous contract, the court finds it notable that the merger bonus payment was over four times the magnitude of the aggregate bonuses Comet paid out to its employees over the three years prior to the merger. This supports the conclusion that the merger bonus payment differed from other bonus payments made by Comet not just in degree, but in kind.

The Comet shareholders contend (as does MIVA, and the court agrees) that the contract

The court is convinced that the merger bonus payment qualified as a "one-time, non-recurring expense" pursuant to the plain, unambiguous meaning of the merger agreement, and therefore should properly have been excluded from the calculation of the 2004 cost per user. When the $800,000 merger bonus payment is subtracted from the 2004 costs, the resulting 2004 profit per user increases from $0.014 to $0.037, which is above the $0.03 profit per user threshold for payout under the 2004 Revenue Goal. The Comet shareholders are therefore entitled to the full payout of $1,666,500 on the 2004 Revenue Goal pursuant to the MIVA Direct Earnout Calculation.

## IV.

The Comet shareholders claim in Count II of their complaint that they are entitled

to payment on the 2004 Cost Goal due to accounting irregularities. MIVA seeks summary judgment against the Comet shareholders on this claim. The Comet shareholders, who had ample opportunity to initiate fact discovery but failed to do so, have adduced no evidence of any accounting irregularity that could entitle them to any additional payment. Nor does it seem likely that any accounting errors of sufficient magnitude could be found, in the absence of fraud on MIVA's part, a claim which the plaintiffs would have been obliged to plead with particularity.[27] The court therefore agrees with MIVA that it is entitled to summary judgment.

■■■■ Mere allegations or denials are not sufficient to avoid summary judgment. Rather, Court of Chancery Rule 56(e) states:

is unambiguous. Nevertheless, in their opening brief, the plaintiffs point to GAAP accounting principles, stating that the "closest equivalent to 'one-time, non-recurring expenses' ... within [GAAP] is found in Accounting Principles Board Opinion No. 30 ('APB 30') which provides the criteria for Extraordinary Items...." Pl.'s Opening Br. 11. The plaintiffs further offer an affidavit from expert witness John Barron that the merger bonus payment "represented an extraordinary item *as defined* in APB 30 and should, therefore, be considered a 'one-time, non-recurring expense'...." Barron Aff. ¶ 23 (emphasis added). When deposed by the defendant's counsel, Barron admitted that, although the merger bonus payment would qualify as an extraordinary item under the *definition* contained in APB 30, because the extraordinary item characterization is very narrowly applied in practice under GAAP, the merger bonus payment would be unlikely to qualify as an extraordinary item in practice. Barron also testified that he did not believe the parties "intended 'one-time, non-recurring' be defined or applied in accordance with GAAP," since "[h]ad that been their intent, they would have said so in the agreement." Barron Dep. 136–37, Feb. 27, 2008. In response, MIVA suggests that, if the court chooses to look at outside accounting

standards because the bonus payment would not qualify as an "extraordinary item" under GAAP, it should not be excluded as a "one-time, non-recurring expense."

The court does not apply the GAAP definition contained in APB 30 for two reasons. First, the parties chose to use the phrase "one-time, non-recurring expense" and not "extraordinary item in accordance with GAAP practice." The obvious implication is that the parties chose this alternative phrase precisely because they did *not* mean "extraordinary item in accordance with GAAP practice," particularly in light of the fact that the parties obviously knew how to invoke GAAP standards when they wanted to. *See* Merger Agreement § 2.4(c). Second, the GAAP "extraordinary items" standard, as applied in practice, is so strict that even the charges resulting from the September 11, 2001 terrorist attacks did not qualify. *See* Ten Eyck Aff. ¶¶ 21–22. Thus, it seems unreasonable to the court that the parties intended to apply this ultra-strict standard, and to now do so would require the court to assign a meaning to the agreement clearly different than the "common and ordinary" meaning of the words "one-time, non-recurring expense." *NBC Universal, Inc.*, 2005 WL 1038997, at *9.

27. Ct. Ch. R. 9(b).

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MIVA points out, and the plaintiffs do not deny, that even after excluding the merger bonus payment from the 2004 cost per user, the 2004 profit per user is only $0.037. Both parties further agree that the merger agreement clearly requires the 2004 profit per user to be at least $0.06 in order to trigger any payment to the Comet shareholders under the 2004 Cost Goal. To make up for this $0.023 profit per user shortfall, the Comet shareholders would have to uncover an additional $784,000 (approximately) in what their complaint labels "bad faith accounting manipulations." [28] Yet the Comet shareholders have not produced evidence of even a single dollar of other improperly included costs or improperly excluded revenue. Instead, the Comet shareholders now request (for the first time, 19 months after filing their complaint) an opportunity to take discovery on this issue. They are too late. Court of Chancery Rule 56(f) permits (but does not require) the court to deny summary judg-

ment "when it appear[s] from the affidavits of a party opposing the motion that the party cannot for the reasons stated present by affidavit facts essential to justify the party's opposition." This court has repeatedly denied requests for discovery made in opposition to a motion for summary judgment in the absence of a Rule 56(f) affidavit, instead ordering summary judgment in such cases. [29] The Comet shareholders have not provided such an affidavit.

The Comet shareholders' counter-arguments are misplaced. The Comet shareholders cite *Mann v. Oppenheimer & Co.* for the proposition that summary judgment should be denied when a party (and particularly the party opposing the motion) has not had a "reasonable opportunity" for discovery. [30] However *Mann* is entirely inapposite to this case. In *Mann*, the defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted, pursuant to Court of Chancery Rule 12(b)(6). [31] The defendants relied in their motion on evidence outside the four corners of the plaintiff's complaint, and the court thus properly treated the motion as one for summary judgment, in accordance with Rule 12(b). [32] The court refused the plaintiffs the opportunity to take discovery to respond to the outside evidence presented by the defendants and granted the defendants summary judgment. The Delaware Supreme Court reversed. [33] In contrast, the Comet share-

---

28. Compl. ¶ 77 at 13.

29. *See, e.g., In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1104–05 (Del.Ch.2003); *Nagy v. Bistricer*, 770 A.2d 43, 60 n. 42 (Del. Ch.2000); *Shenandoah Life Ins. Co. v. Valero Energy Corp.*, 1988 WL 63491, at *1 (Del.Ch.).

30. Pl.'s Br. in Opp'n 31 (citing 517 A.2d 1056, 1060 (Del.1986)).

31. 517 A.2d at 1059–60.

32. *Id.; see* Ct. Ch. R. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

33. *Mann*, 517 A.2d at 1059–60.

holders have made no effort to take fact discovery, either during the six months between the filing of the answer and the Comet shareholders' own motion for partial summary judgment, or, in fact, at any time since the filing of this case in March 2007. There is, therefore, no question that the Comet shareholders have had a reasonable *opportunity* to take discovery, they simply wasted it. To allow them to now set out on a fishing expedition in reward for their torpor would be both unfair to MIVA and contrary to established law.[34]

## V.

The Comet shareholders, in Count III of their complaint, allege that they are owed interest on the earnout payment, which they claim was unnecessarily delayed until June 2006. They assert that because the 2004 component of the payment had been fixed by March 2005, the 15–month delay until June 2006 in paying that portion warrants the payment of interest for the period of the delay. MIVA has moved for summary judgment, arguing that the Comet shareholders have pointed to no provision in the merger agreement that was breached. Because the Comet shareholders are clearly entitled to summary judgment, the court will

grant summary judgment on this count *sua sponte* to the plaintiffs, in response to the defendant's motion.

■■■ The court has inherent authority to grant summary judgment *sua sponte* against the moving party, but should only do so when the state of the record is such that the non-moving party is clearly entitled to such relief.[35] Despite MIVA's contention that the Comet shareholders cannot maintain an action for breach because they cannot cite a provision of the agreement which is breached by the purported delay in payment or failure to pay interest, "[i]n every contract there is implied a promise or duty to perform with reasonable expediency the thing agreed to be done; a failure to do so is a breach of contract." [36]

■■ The Comet shareholders need not show that the merger agreement contains a provision requiring payment on a specific date and the payment of interest for any delay. Rather, they must simply show that payment was unreasonably withheld after the right to that payment had absolutely vested in the Comet shareholders. MIVA, by its own SEC filings, determined by March 16, 2005 that the Comet shareholders were entitled to the payment of

---

**34.** *Cf. Stinnes Interoil, Inc. v. Petrokey Corp.,* 1983 WL 21114, at *2–3 (Del.Super.) (denying a request for further discovery in resisting a motion for summary judgment based on Rule 56(f) where the non-moving party has not shown that it was prevented in its efforts to take discovery); *Crescent/Mach I Partners, L.P. v. Turner,* 846 A.2d 963, 980 (Del.Ch. 2000) (quoting *Nebenzahl v. Miller,* 1996 WL 494913, at *3 (Del.Ch.)) ("Conclusory allegations that are pleaded without supporting facts 'cannot be the platform for launching an extensive litigious fishing expedition for facts through discovery in the hopes of finding something to support them.' "). The Comet shareholders' citation to *Moore v. Anesthesia Servs. P.A.,* 2008 WL 484452 (Del.Super.) is equally unavailing. In *Moore,* the plaintiffs'

attempts at taking discovery had been resisted by the defendants, and the plaintiffs therefore did not have sufficient opportunity to develop the factual bases for their claim at the time the motion for summary judgment was presented by the defendants. 2008 WL 484452, at *5. As has already been discussed, this is unlike the instant case.

**35.** *Stroud v. Grace,* 606 A.2d 75, 81 (Del. 1992); *see also Bank of Del. v. Claymont Fire Co. No. 1,* 528 A.2d 1196, 1199 (Del.1987).

**36.** 23 WILLISTON ON CONTRACTS § 63:24 (4th ed.) (quoting *Martin v. Star Publishing Co.,* 126 A.2d 238, 244 (Del.1956) ("If no time for performance is fixed, the court will imply a reasonable time. . . .")).

approximately $1.1 million under the earn-out as a result of Comet's 2004 performance.[37] Furthermore, as admitted by MIVA's counsel at oral argument, there is no provision in the earnout for clawing back or reducing that amount owed based on later events. Thus, there is no question that, on the record before the court, MIVA knew by March 16, 2005 that the Comet shareholders' right to the payment of $1.1 million under the earnout had absolutely vested. MIVA therefore had a duty to make payment on that obligation within a reasonable time in the absence of a contractual term to the contrary. MIVA's annual report for 2004 indicated that at the end of 2004 it held approximately $29 million in cash and cash equivalents, and had generated $7 million in net cash flow during 2004.[38] It would have been quite reasonable to expect MIVA to make payment of a $1.1 million obligation within 90 days of March 16, 2005.[39]

The Comet shareholders are therefore entitled to damages for MIVA's breach of its implied obligation to make payment in a reasonably timely manner. The appropriate damages for breach of contract by delaying payment is the award of interest for the period of the delay. The Comet shareholders are entitled to one year of statutory interest from June 2005 until June 2006.

## VI.

For the reasons stated herein, the plaintiffs' motion for summary judgment on Count I is GRANTED, and the defendant's cross-motion for summary judgment as to Count I is DENIED. The plaintiffs are entitled under Count I to payment of $1,666,500 plus statutory interest from June 2005 to the present time. The defendant's motion for summary judgment as to Count II is GRANTED. The defendant's motion for summary judgment as to Count III is DENIED, and summary judgment in favor of the plaintiffs on Count III is GRANTED. Counsel for the plaintiffs shall submit a proposed form of implementing order within 10 days, on notice. IT IS SO ORDERED.

---

**37.** FindWhat.com, Inc., Annual Report (Form 10–K), at 42 (March 16, 2005).

**38.** FindWhat.com, Inc., Annual Report (Form 10–K), at F–7 (March 16, 2005).

**39.** Notably, MIVA did in fact make its earnout payment within 90 days of filing its 2005 10–K on March 16, 2006.