**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 9, 2017
Date Decided: June 22, 2017

Gerald A. Lechliter
44 Harborview Road
Lewes, DE 19958

Daniel F. McAllister, Esquire
Glenn C. Mandalas, Esquire
Baird Mandalas Brockstedt, LLC
6 South State Street
Dover, DE 19901

>　Re:　*Gerald A. Lechliter v. Delaware Department of Natural Resources and Environmental Control, et al.*
> C.A. No. 10430-VCG

Dear Counsel and Col. Lechliter:

Before me are cross case dispositive motions in this matter. The Defendant Mayor and City Council of Lewes (the "Council") moved to dismiss, based on the Complaint in this matter ("*Dog Park I*") and my decision in a related matter ("*Dog Park II*").[1] The Plaintiff, Col. Lechliter, agrees that the matter is "ripe for decision," but seeks to cite to the record created in *Dog Park I*, and asks that I convert the Council's motion to one for summary judgment. The Council does not oppose this request, thus, I consider this matter submitted on cross motions for summary judgment on the record as it exists.

---

[1] *Lechliter v. Becker*, 2017 WL 117596 (Del. Ch. Jan. 12, 2017).

The road to summary judgment is well-worn. A movant is entitled to a judgment only where no material facts remain in dispute and the record indicates that she is entitled to judgment as a matter of law. Where the parties have all moved for a judgment and point to no issues of material fact, the cross motions are considered as submitted on a stipulated record.[2] In light of the record here, I find that the Council is entitled to a judgment in its favor.

## I. BACKGROUND

This matter, writ large, involves the use by the City of Lewes, the State of Delaware and others of a former industrial park transferred to the State and held as Open Space (the "Open Space"). Col. Lechliter has brought three actions contesting that use.[3] Many issues were raised and decided or mooted in these litigations. Only two remain. Was a 2014 Council meeting in compliance with the Freedom of Information Act ("FOIA")? And if not, what remedy, if any, is available? I here address only the facts pertinent to that inquiry, in light of the cross motions.

Lewes Unleased ("Unleashed"), formerly a defendant in this action, is an entity formed to facilitate creation and operation of a "dog park" in Lewes. A dog park is a fenced-in area where dogs can run free of leashes or other restraints, under

---

[2] *E.g.*, *Comet Systems, Inc. v. Shareholders' Agent*, 980 A.2d 1024, 1029 (Del. Ch. 2008).
[3] *See Lechliter v. Delaware Dep't of Nat. Res. & Envtl. Control*, 2015 WL 9591587 (Del. Ch. Dec. 31, 2015); *Lechliter v. Delaware Dep't of Nat. Res. Div. of Parks & Recreation*, 2015 WL 7720277, at *1 (Del. Ch. Nov. 30, 2015); *Dog Park II*, 2017 WL 117596.

the supervision of their masters.[4] The Council held a public meeting on November 19, 2012 (the "2012 Meeting"), the published agenda for which informed the public that the location of a proposed dog park (the "Dog Park") would be discussed. At the meeting, the Council provisionally identified a location for the Dog Park in the Open Space, near where a road, Park Road, traversing the Open Space, crosses a marsh and mosquito ditch that drain to Canary Creek.[5]

On October 6, 2014, the Council held another meeting (the "2014 Meeting") that Col. Lechliter contends violated FOIA. The published agenda for the 2014 Meeting informed the public that the meeting would include "Presentation and Consideration of a sublease[6] with Lewes Unleashed for land off of Park Road to be developed by Lewes Unleashed for a dog park." At the meeting, such a sublease to Lewes Unleashed was considered, and approved. The location was off Park Road, but was some distance away from the mosquito ditch. The location subleased was adjacent to a short cul-de-sac off of Park Road, in an area of the Open Space closer to Col. Lechliter's house. According to Col. Lechliter, the published agenda for the 2014 Meeting violated FOIA because it did not inform the public that the proposed

---

[4] Or, as some pet advocates and canophiles would have it, under the guidance of their guardians. *See* Animal Health Institute, *Pet Owner or Guardian?*, State Advocacy Issue (Nov. 2005), https://www.avma.org/Advocacy/StateAndLocal/Pages/owner-guardian-ahi.aspx.
[5] Also known, on account of earthworks nearby dating from before European settlement, as Pagan Creek.
[6] The land is leased by the City of Lewes from the State.

3

location for the Dog Park sublease was different from that considered at the 2012 Meeting.

The final pertinent facts involve a third Council meeting, held on January 11, 2016 (the "2016 Meeting"). The Council, at the 2016 meeting, considered an amendment to the sublease, somewhat increasing it in size. That amendment was approved, and pursuant to that approval the Mayor of Lewes signed an addendum to the sublease, providing that "to the extent not inconsistent [with the amendment] all of the other terms and conditions of the sublease are hereby ratified and affirmed." Col. Lechliter challenged the legality of the 2016 Meeting, the amendment to the sublease approved by the Council at that meeting, and the addendum ratifying the sublease, on grounds that the 2016 Meeting failed to comply with FOIA. I rejected that position, and found the 2016 Meeting FOIA-compliant, in my decision in *Dog Park II*.

## II. ANALYSIS

FOIA requires that public bodies such as the Council must give the public at least seven days' notice of the fact that a meeting will take place, and shall include therein "the agenda, if such has been determined at that time . . . ; however, the agenda shall be subject to change to include additional items . . . ."[7]

---

[7] 29 *Del. C.* § 10004(e)(2).

In order that the purpose of the agenda requirement be served, it should, at least, "alert members of the public with an intense interest in" the matter that the subject will be taken up by the Council.[8]   In other words, members of the public interested in an issue should be able to review a notice and determine that an issue important to them will be under consideration.  As I pointed out in *Dog Park II*, FOIA provides an informational right to allow public involvement in government.  If that interest is complied with, FOIA is satisfied; it is not a tool for use by those who disagree with the actions of their government to have those actions set aside, after the fact, on hyper-technical grounds.  Such a result would be as inimical to the open exercise of democracy as failure of the informational right itself.

It is in that light that I must examine whether the notice given of the 2014 Meeting offends FOIA.  The public notice for the 2014 Meeting disclosed to the public that the addenda included "[p]resentation and consideration of a sublease with Lewes Unleashed for land off of Park Road, to be developed . . . for a dog park."  In other words, the Council would consider the very act—the sublease to Lewes Unleashed—that was necessary to make the Dog Park a reality.  This is certainly sufficient to put members of the public "intensely interested" in the Dog Park on notice that they should attend the 2014 Meeting.

---

[8] *Ianni v. Dep't of Election of New Castle Cty.*, 1986 WL 9610, at *4 (Del. Ch. Aug 29, 1986).

Nonetheless, Col. Lechliter contends that the consideration of the location of the Dog Park at the 2014 Meeting was insufficiently disclosed to the public, and that, as a result, the actions at that Meeting, including approval of the sublease, are void. The syllogism he proposes runs thusly: The 2012 Meeting approved a proposed location for the Dog Park off Park Road near the mosquito ditch. The sublease approved by the Council at the 2014 Meeting was for land off Park Road near the cul-de-sac. The notice for the 2014 Meeting only informed the public that a "sublease" of land for the Dog Park would be considered, and not a change in the *location* for that sublease from that considered at the 2012 Meeting. Therefore, according to Lechliter, those whose "intense interest" was limited to ensuring that the Dog Park be nearer the mosquito ditch than the cul-de-sac were not given sufficient notice that it was in their interest to attend the 2014 Meeting.

Simply to state this syllogism is, I think, sufficient to demonstrate that Col. Lechliter's argument is inconsistent with the practical informational purpose of FOIA. Anyone intensely interested in any aspect of the Dog Park, including its location, was on notice that a subject close to his heart was under consideration. The City was considering a sublease of its open space for a dog park, and location is an indispensable element of a lease. The level of detail proposed by Col. Lechliter—presumably including that a change in the location of the Dog Park within the Open Space was under consideration—is inconsistent not only with the practical purpose

6

of the act, but with the specific provision at issue, Section 10004(e)(2). That Section provides even for post-publication amendment of the agenda, so long as the intent of FOIA is not frustrated thereby. Here, elected officials of Lewes approved a sublease for the creation of the Dog Park after a meeting where the public was informed that such a sublease would be under consideration. To hold, as Col. Lechliter requests, that the results of such a meeting are void because the notice did not explicitly include consideration of the Dog Park's location, would be to impose "hyper-technical requirements that serve as snares for public officials, and frustrate their ability to do the public's business, without adding meaningfully to citizens' rights to monitor that public business."[9] For the same reasons I rejected such an application of FOIA in *Dog Park II*, I reject it here.

The Council is entitled to judgment for a separate reason. Given the fact that I have found that the 2016 Meeting was compliant with FOIA, and given that the Dog Park sublease was both amended and otherwise ratified pursuant to that meeting, no effective remedy could ensue from a decision that the 2014 Meeting was non-FOIA-compliant. Setting aside the results of the 2014 Meeting as void would leave the sublease as amended and ratified after the 2016 Meeting in place, and would thus be an effective nullity. Equity will not require an idle act.

---

[9] *Dog Park II*, 2017 WL 117596, at *3.

Col. Lechliter cites as persuasive authority an Illinois action, *Feret v. Schillerstrom*,[10] for the proposition that a plaintiff's challenge under FOIA of a governmental action is not mooted by subsequent governmental action unless the first act is in fact repealed by the second. A similar, subsequent action cannot moot a prior violation. *Feret* involved serial actions of a county "Board," presumably the analog of the Sussex County Council, approving expansion to O'Hare airport near Chicago.[11] The text of these enactments is not given in the opinion. To the extent *Feret* would apply here to mandate consideration of voiding the sublease approved following the 2014 Meeting, notwithstanding that such would leave the amended sublease in place, I decline to follow it; such an action would be inconsistent with both equity and the goals and text of FOIA, as I read it.

For the foregoing reasons, the Council is entitled to a judgment in its favor. To the extent the Council seeks to shift legal fees to the Plaintiff, no justification for such fee-shifting has been demonstrated, and the request is denied.

Col. Lechliter spent his career in service to the United States. He has spent the last several years on public service of another kind; attempting to force state and local government to comply with the law in the use of the Open Space, as he

---

[10] 844 N.E.2d 447 (Ill. App. Ct. 2006). Col. Lechliter concedes that no Delaware precedent supports (or undercuts) his position on mootness. It is a tribute to Lechliter's dogged persistence here, *pro se*, that he has Feretted out, so to speak, a decision on point from Illinois.
[11] *See id.*

8

understood that law. This concludes the third legal action in which he has undertaken that role. I have available to me the United States Army's Field Service Regulations as they existed at the beginning of the First World War: They provide guidance on withdrawal from the field, noting that "[n]o other situation in combat demands so high an order of skill . . . as does withdrawal from action." And yet, Ecclesiastes tells us, there is a meet time for every thing to take place. I hope that the parties, all residents of the same small and pleasant city, can in the future relate as neighbors rather than litigants.

 An appropriate Order is attached.

Sincerely,

/s/Sam Glasscock III

Sam Glasscock III

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| Gerald A. Lechliter; *pro se* | ) | |
| | ) | |
| Petitioner/Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10430-VCG |
| | ) | |
| Delaware Department of Natural | ) | |
| Resources and Environmental Control | ) | |
| ("DNREC"); DNREC Division of Parks | ) | |
| and Recreation ("Parks"); the Delaware | ) | |
| Department of Transportation | ) | |
| ("DELDOT"); The Mayor and Council | ) | |
| ("M&CC") of the City of Lewes | ) | |
| ("City"); J.G. Townsend, Jr. & Sons, Inc. | ) | |
| ("Townsend"); Lingo Asset | ) | |
| Management, Limited Liability Corp. | ) | |
| ("LLC")("Lingo"); and Lewes Unleashed | ) | |
| ("LUL"), | ) | |
| | ) | |
| Respondents/Defendants. | ) | |

**ORDER**

AND NOW, this 22nd day of June, 2017,

The Court having considered the Cross Motions for Summary Judgment, and for the reasons set forth in the Letter Opinion dated June 22, 2017, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

SO ORDERED:


/s/ Sam Glasscock III

10

Vice Chancellor