# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CIRBA INC. d/b/a DENSIFY, and CIRBA IP, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 2021-0454-SG |
| TURBONOMIC, INC., | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Date Submitted:  December 21, 2021
Date Decided:  April 1, 2022

Douglas E. McCann, Joseph B. Warden, and Kelly Allenspach Del Dotto, of FISH & RICHARDSON P.C., Wilmington, Delaware, *Attorneys for Plaintiffs.*

Kenneth J. Nachbar and Thomas P. Will, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; OF COUNSEL:  Richard T. Marooney, Brent P. Ray, Allison Altersohn, and Matthew Bush, of KING & SPALDING LLP, New York, New York, *Attorneys for Defendant.*

**GLASSCOCK, Vice Chancellor**

I have before me cross-motions for summary judgment brought by Plaintiffs Cirba Inc. and Cirba IP, Inc. (together, "Densify") and Defendant Turbonomic, Inc. ("Turbonomic"). This memorandum opinion grants in part and denies in part both parties' motions.

This matter had its inception, remotely, in patent cross-litigation between these parties in 2020. That litigation ended in a settlement, memorialized in a settlement agreement. In that agreement, the parties agreed to refrain from further challenge to the validity of the patents at issue. Moreover, the parties agreed to what I will call the "Section 6 obligations": to indemnify one another for any claim for indemnification brought by a "customer, technology partner, or reseller" against the counterparty arising out of allegations of patent infringement.

Most pertinently, here, the parties agreed that rights and obligations embodied in the agreement could not be assigned to third parties, absent counterparty consent. The agreement defined "Assignment" in an unsurprising way, as an act to "assign, transfer, alienate, delegate, sub-delegate, divest or sell"; in other words, the parties defined "Assignment" as "an assignment." The contractual language then went on to provide that "an Assignment" includes "merger, amalgamation, reorganization or consolidation" and similar actions.

In 2021, Turbonomic had agreed to be acquired by IBM, via merger. It sought Densify's consent to an Assignment, which per the settlement agreement could not

be unreasonably withheld. Densify refused consent, on the ground that IBM was a customer and that its assumption of the rights under the settlement agreement would be harmful to Densify. Densify ultimately brought this action seeking to enjoin the merger, based on its contention that the merger itself was an "Assignment."

After hearing the parties on Densify's proposed Prelimiary Injunction, I denied the motion. I found that the contractual language was ambiguous, but most likely prohibited assignment of settlement duties *via* merger, and did not mean that a merger constituted a per se Assignment.

The parties have proceeded to discovery, and now present cross-motions for summary judgment.

## I. BACKGROUND[1]

*A. Factual Background*

Densify and Turbonomic are competitors in the cloud computing software industry.[2] In April 2020, Densify sued Turbonomic for patent infringement, and

---

[1] Unless otherwise noted, the information in this opinion is undisputed and taken from the verified pleadings, affidavits, and other evidence submitted to the Court. Citations in the form of "Smith Decl. —" refer to the Decl. of Gerry Smith Pursuant to 10 *Del. C.* § 3927 in Supp. of Pls.' Mot. for Summ. J., Dkt. No. 62. Citations in the form of "Smith Decl., Ex. —" refer to the exhibits attached to the Smith Decl., Dkt. No. 62. Citations in the form of "Warden Decl. —" refer to the Decl. of Joseph B. Warden Pursuant to 10 *Del. C.* § 3927 in Supp. of Pls.' Mot. for Summ. J., Dkt. No. 63. Citations in the form of "Warden Decl., Ex. —" refer to the exhibits attached to the Warden Decl., Dkt. No. 63.

[2] Smith Decl. ¶¶ 2, 7.

2

Turbonomic countersued for patent infringement shortly thereafter.[3] The parties settled the patent infringement lawsuit on January 10, 2021, when they entered into a settlement agreement that provided for the dismissal of the parties' respective patent claims "with prejudice" (the "Settlement Agreement").[4]

The Settlement Agreement included several continuing obligations, which are at issue here. First, Section 5 of the Settlement Agreement provided that the parties would not challenge "the patentability, validity, or enforceability" of the patents at issue in the underlying litigation.[5] Second, Section 6 of the Settlement Agreement required both parties to "indemnify, defend and hold harmless" one another "from and against any claim or suit for indemnification brought by a . . . customer, technology partner, or reseller" alleging infringement of the challenged patents.[6] Finally, Section 7 of the Settlement Agreement contained an anti-assignment provision, which stated as follows:

> Assignment. Neither Party may assign, transfer, alienate, delegate, sub-delegate, divest or sell this Agreement, its obligations or liabilities under this Agreement or the rights or benefits granted under this Agreement voluntarily or by operation of law or otherwise without the other Party's prior written consent, not to be withheld, conditioned or delayed unreasonably (an "Assignment"). An Assignment shall be

---

[3] *Id.* ¶¶ 7–8.
[4] Smith Decl. ¶ 10; *see also id.*, Ex. B § 1(b) [such exhibit hereinafter the "Settlement Agreement"]; Settlement Agreement at 7–9.
[5] Settlement Agreement § 5.
[6] *Id.* § 6.

3

deemed to include a merger, amalgamation, reorganization or consolidation or other similar transaction, or series of transactions, of a Party with another entity other than with a wholly owned subsidiary of the Party existing as of the Effective Date. Any such Assignment or attempted Assignment shall be null and void, and for clarity, in the event of an Assignment by or in respect of a Party, the other Party shall [be] relieved and released from its obligations in Section 6.[7]

In February 2021, shortly after the parties executed the Settlement Agreement, Turbonomic and IBM began discussing a potential acquisition of Turbonomic (the "Acquisition").[8] In connection with those discussions, IBM learned of the Settlement Agreement.[9] As a result, IBM asked Turbonomic to obtain Densify's consent to the Acquisition in light of the anti-assignment provision in the Settlement Agreement.[10]

On May 4, 2021, Turbonomic informed Densify by letter of the IBM Acquisition.[11] In the letter, Turbonomic wrote, "[o]nce consummated, the Acquisition would be deemed to constitute an Assignment within the meaning of Section 7 of the Settlement Agreement."[12] The letter then requested Densify's

---

[7] *Id.* § 7.
[8] Warden Decl., Ex. L at 128:8–10.
[9] *Id.* at 134:25–135:9.
[10] *Id.* at 86:2–7.
[11] Warden Decl., Ex. H.
[12] *Id.* at 1.

"consent to such Assignment, which pursuant to the terms of the Settlement Agreement may not be withheld, conditioned or delayed unreasonably."[13]

After requesting more information about the potential Assignment to IBM,[14] Densify informed Turbonomic by letter on May 20, 2021 that it "cannot consent to Turbonomic's assignment."[15] Densify explained in the letter that an Assignment of the Settlement Agreement to IBM would pose "enormous prejudice to Densify," given that Densify had "a longstanding relationship with IBM, which is Densify's largest partner."[16] Densify's letter also took the position that "any merger by Turbonomic," "including a reverse triangular merger," would constitute an Assignment under the Settlement Agreement that "cannot proceed without Densify's consent."[17] The letter thus asked Turbonomic to confirm by May 22, 2021 that it would not close the Acquisition.[18]

### B. Procedural History

After Turbonomic failed to confirm that the Acquisition would not close, Densify initiated this action on May 24, 2021, seeking to enjoin the Acquisition on the basis that the Acquisition constituted an Assignment, as defined in the Settlement

---

[13] *Id.*
[14] *E.g.*, Warden Decl., Ex. I.
[15] Warden Decl., Ex. K at 1.
[16] *Id.*
[17] *Id.*
[18] *Id.*

Agreement, requiring Densify's consent.[19]  I denied Densify's motion for a preliminary injunction in a bench ruling on June 14, 2021.[20]  In doing so, I held that the definition of "Assignment" was ambiguous, and that Densify was not "more likely than not" to succeed in its interpretation that the Acquisition constituted an Assignment.[21]  The alternative construction, which I found preliminarily more likely, was that the rights and duties of the Settlement Agreement could not be assigned to third parties, including by a merger.[22]  The Settlement Agreement itself provided the remedy for such an aborted Assignment; the purported Assignment was null and void, and the non-breaching party was relieved of its Section 6 obligations.[23]  IBM completed the Acquisition of Turbonomic on June 16, 2021, in a reverse triangular merger structure pursuant to which Turbonomic became a wholly owned subsidiary of IBM.[24]

Densify thereafter filed an amended complaint on June 23, 2021, which is currently the operative complaint.[25]  The amended complaint seeks damages from Turbonomic for consummating the Acquisition without Densify's consent, and a

---

[19] *See generally* Verified Compl., Dkt. No. 1.
[20] Tr. Oral Arg. re Pls.' Mot. Prelim. Inj. and Ct.'s Ruling, Dkt. No. 43 at 23:23–30:9.
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *See generally* Warden Decl., Ex. Q.
[25] First Am. Verified Compl., Dkt. No. 42.

declaratory judgment regarding the scope of Densify's and Turbonomic's rights and obligations under the Settlement Agreement in light of the Acquisition.[26] Densify moved for summary judgment on November 5, 2021,[27] and Turbonomic filed a cross-motion for summary judgment on November 19, 2021.[28] I heard oral argument on December 21, 2021, and I consider the matter fully submitted as of that date.

## II. ANALYSIS

On these cross-motions for summary judgment, each party must show that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[29] Where neither party has argued that there is an issue of material fact, "the cross-motions are deemed to be a stipulation for a decision based on the submitted record."[30] The Court must deny summary judgment, however, if a material factual dispute exists.[31] The moving party bears the burden of demonstrating that there is no question of material fact.[32] A fact is material if it

---

[26] *Id.* ¶¶ 54–67.

[27] Pls.' Mot. Summ. J., Dkt. No. 62; Opening Br. Supp. Pls.' Mot. Summ. J., Dkt. No. 62 [hereinafter "Pls.' OB"]; *see also* Pls.' Reply Br. Supp. Its Mot. Summ. J. Opp. Turbonomic Inc's Cross-Mot. Summ. J., Dkt. No. 72.

[28] Turbonomic, Inc.'s Cross-Mot. Summ. J., Dkt. No. 67; Turbonomic, Inc.'s Answering Br. Opp. Pls.' Mot. Summ. J. Supp. Cross-Mot. Summ. J., Dkt. No. 68 [hereinafter "Def.'s AB"]; *see also* Turbonomic, Inc.'s Reply Br. Supp. Its Cross-Mot. Summ. J., Dkt. No. 74.

[29] *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1029 (Del. Ch. 2008); *see also* Ct. Ch. R. 56(c).

[30] *Comet*, 980 A.2d at 1029 (Del. Ch. 2008).

[31] *Id.*

[32] *Id.*

"might affect the outcome of the suit."[33] In other words, a genuine issue of material fact exists if the evidence is such that a reasonable fact finder "could return a verdict for the nonmoving party."[34] "If the movant puts in the record facts which, if undenied, entitle him to summary judgment, the burden shifts to the defending party to dispute the facts by affidavit or proof of similar weight."[35]

The parties here dispute whether IBM's Acquisition of Turbonomic effectuated an Assignment as defined by the Settlement Agreement. For the reasons below, I find that the Acquisition did not effectuate an Assignment to IBM.

As an initial matter, it is undisputed that Turbonomic requested Densify's consent to the Acquisition because it viewed the Acquisition "to constitute an Assignment."[36] That is, Turbonomic conceded that it was attempting to effectuate an Assignment to IBM via the Acquisition.

It is also undisputed that Densify refused to consent to the requested Assignment to IBM.[37] Under the Settlement Agreement, Densify's consent could not be "withheld, conditioned or delayed unreasonably."[38] Accordingly, the parties

---

[33] *Graven v. Lucero*, 2013 WL 6797566, at *2 (Del. Ch. Dec. 20, 2013) (quoting *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009)).
[34] *Id.* (quoting *Deloitte*, 2009 WL 5200657, at *3).
[35] *Comet*, 980 A.2d at 1029 (quoting *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979)).
[36] Warden Decl., Ex. H at 1.
[37] Warden Decl., Ex. K at 1.
[38] Settlement Agreement § 7.

8

dispute, and the predicate issue before me is, whether Densify's withholding of consent was reasonable.

Although "reasonableness" "is not frequently amenable to resolution on summary judgment,"[39] I find that Turbonomic has failed to identify a material disputed fact that "might affect the outcome of the" reasonableness inquiry in its favor.[40] Turbonomic first contends that Densify waived any reasonableness argument by failing to argue in its opening brief that its withholding of consent was reasonable.[41] In boxing terms, Turbonomic has led with its chin. Densify's opening brief included a section titled, "Densify's Reasonable Withholding of Consent to the IBM-Turbonomic Merger."[42] Densify argued at length in its opening brief that it was reasonable to withhold consent to an Assignment to IBM because, as Densify's largest reseller, IBM could use its knowledge of Densify's business, products and customers to compete with Densify, using the Turbonomic patents that were the subject of the Settlement Agreement.[43] Accordingly, I find no basis to hold that Densify waived its reasonableness argument.[44]

---

[39] *Christine Manor Civic Ass'n v. Gullo*, 2007 WL 1074763, at *1 (Del. Ch. Mar. 29, 2007).
[40] *Graven*, 2013 WL 6797566, at *2 (quoting *Deloitte*, 2009 WL 5200657, at *3).
[41] Def.'s AB at 22–24.
[42] Pls.' OB § II.D.
[43] *Id.*
[44] *Cf. CHC Cos., Inc. v. Sanders*, 2013 WL 1952017, at *5 (Del. Ch. May 10, 2013) ("It is the preference of this Court always to determine matters on the merits."); *Cartanza v. Cartanza*, 2013 WL 3376964, at *1 n.6 (Del. Ch. July 8, 2013) ("Consistent with this Court's general

Turbonomic next asserts that "genuine factual disputes" preclude summary judgment regarding the reasonableness of Densify's refusal to consent to an Assignment.[45] As discussed below, I find that none of the purported factual disputes raised by Turbonomic are relevant to that reasonableness inquiry.

*First*, Turbonomic argues that the potential harm Densify identified to justify its refusal to consent stemmed from the Acquisition itself, not from an Assignment made pursuant to the Acquisition.[46] Turbonomic argues that Densify has failed to identify any harm caused by an Assignment of the Settlement Agreement to IBM, as opposed to harm caused by IBM's Acquisition of Turbonomic.[47] But it was Turbonomic who took the position, when it requested Densify's consent, that the Acquisition itself constituted an Assignment.[48] Densify's justification for withholding consent was necessarily responsive to that request, and thus premised on the potential harms flowing from the Acquisition itself. Turbonomic offers no reason to suggest that Densify's concerns regarding a potential Assignment should have been responsive to Turbonomic's new litigation-driven view that the Acquisition was not an Assignment, instead of being responsive to Turbonomic's

---

preference for addressing issues on the merits, I have assumed, without deciding, that Defendants did not waive the arguments contained in the Motion.").

[45] Def.'s AB at 24–27.
[46] *Id.* at 24–25.
[47] *Id.*
[48] *See supra* note 12 and accompanying text.

actual consent request asserting that it was an Assignment. Accordingly, even if Turbonomic is now correct that the Acquisition was not an Assignment, it was reasonable for Densify to consider the potential harms posed by the Acquisition itself when Turbonomic represented in its consent request that it believed the Acquisition was an Assignment.

*Second*, Turbonomic argues that IBM is "now" responsible for 0% of Densify's customers, because "[a]ll of Densify's business relationship with IBM was transferred to" an independent entity called "Kyndryl."[49] According to Turbonomic, Densify therefore suffers "no harm" from the "currently" "non-existent business relationship with IBM."[50] That is irrelevant. Whatever IBM's "current" business relationship with Densify is, the reasonableness of Densify's refusal to consent must be assessed as of the time it withheld consent, not at some later point in time under unanticipated facts. Turbonomic does not dispute that at the time Densify refused to consent to the requested Assignment, IBM sold Densify products to 57% of Densify's customers, which amounted to 41% of Densify's annualized revenue stream at the time.[51] That Densify has since terminated its relationship with IBM

---

[49] Def.'s AB at 25–27.
[50] *Id.*
[51] Smith Decl. ¶ 12.

says nothing about the harm Densify reasonably anticipated when it decided to withhold consent, based on its then-existing business relationship with IBM.

Moreover, Turbonomic offers no facts to suggest that the insight IBM gleaned into Densify's business, products and customers as a result of their business relationship was somehow neuralyzed[52] when the relationship terminated. Without more, the mere termination of Densify's business relationship with IBM does not suggest that Densify's concerns about IBM's potential competitive advantage as an assignee of the Settlement Agreement were alleviated.

*Finally*, Turbonomic argues that even before the Acquisition and the requested Assignment, IBM's partnership with Densify was never "exclusive."[53] Therefore, Turbonomic contends, IBM was always free to sell Turbonomic products, which was in fact "already occurring" by the time Turbonomic requested the Assignment.[54] Again, that is irrelevant. Notably, although Turbonomic asserts that IBM was "already" "selling IBM-branded Turbonomic product," it does not contend that IBM was using the Turbonomic patents that were the subject of the Settlement Agreement in connection with those sales.[55] If IBM used those patents, absent an Assignment, Densify could have sued IBM to enforce its patent infringement claims.

---

[52] *See* Men In Black (B. Sonnenfeld dir., 1997).
[53] Def.'s AB at 26–27.
[54] *Id.*
[55] *See id.*

An Assignment to IBM would have destroyed that right. Accordingly, the fact that IBM was "already" "selling IBM-branded Turbonomic product" has no relevance to the reasonableness of Densify's refusal to consent to an Assignment.

In sum, Turbonomic has identified no material disputed fact that would demonstrate the unreasonableness of Densify's refusal to consent to the requested Assignment. In addition, and whichever party bears the burden of proof on the issue, I find the evidence of record sufficient to find that Densify's refusal to consent was reasonable.

Accordingly, I examine the effect of the Acquisition under the Settlement Agreement. That agreement provided that an Assignment was impermissible absent (in this situation) Densify's consent. That consent was requested and reasonably denied. In addition, the contract ambiguity I found fatal to the preliminary injunction request is irrelevant here. That issue is whether the merger with IBM was *itself* an Assignment under the Settlement Agreement,[56] or simply the vehicle for an Assignment. Under either reading of the Settlement Agreement, however, Turbonomic's transaction with IBM embodied an attempted Assignment to which Densify withheld contractual consent. Accordingly, the attempted transfer of rights under the Settlement Agreement to IBM, was what the Settlement Agreement refers

---

[56] Thus potentially satisfying the "merits" prong of the preliminary injunction analysis of Densify's attempt to enjoin the merger.

to as an "attempted Assignment."[57]  According to the Settlement Agreement, such contractually non-compliant "Assignment[s] or attempted Assignment[s]" are "null and void."[58]

As a remedy for Turbonomic's attempted Assignment, Densify requests a declaratory judgment that, among other things, Turbonomic and "its privies" are no longer entitled to assert their rights or benefits under Sections 1, 5, and 6 of the Settlement Agreement, including by asserting claim preclusion or *res judicata* defenses to a patent infringement suit brought by Densify.[59]  Densify's proposed order also seeks a declaratory judgement that Densify retains its rights and benefits under the Sections 1, 5, and 6 of the Settlement Agreement, and relieving Densify of its obligation under the Settlement Agreement to refrain from bringing a patent infringement suit against "Turbonomic, its privies, and/or their customers, technology partners, and resellers."[60]

I find that request for relief to be overly broad, in part, and unripe, in part. The Settlement Agreement itself defines the scope of the remedy for an Assignment or attempted Assignment that lacks Densify's reasonable consent:  "Any such Assignment or attempted Assignment shall be null and void, and for clarity, in the

---

[57] Settlement Agreement § 7.
[58] *Id.*
[59] *See* Proposed Order Granting Pls.' Mot. Summ. J., Dkt. No. 62.
[60] *See id.*

14

event of an Assignment by or in respect of a Party, the other Party shall [be] relieved and released from its obligations in Section 6."[61]  I find, accordingly, that under the plain terms of the Settlement Agreement, the Assignment to IBM that Turbonomic attempted is a nullity.  In other words, Turbonomic did not transfer its rights under the Settlement Agreement to IBM, and IBM may not enforce the Section 6 obligations—the indemnification obligations—against Densify.  That was the contract that Densify and Turbonomic bound themselves to in the Settlement Agreement, and Densify is entitled to a declaratory judgment on that ground.  To the extent, however, that Densify seeks a declaration as to its rights in hypothetical future litigation, addressing such a request would be speculative and advisory, and I decline to entertain it here.

Accordingly, Densify's motion is granted to the extent that it seeks a declaratory judgment that the attempted Assignment by Turbonomic was "null and void" and that Densify is "relieved and released" "from its obligations in Section 6" of the Settlement Agreement.  Turbonomic's motion is denied to the extent it seeks a holding to the contrary.  Densify's motion is denied without prejudice to the extent it seeks further relief, and Turbonomic's motion is granted to the extent it seeks a denial of such further relief.

---

[61] Settlement Agreement § 7.

The parties should provide an appropriate form of order.