**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: September 8, 2017
Date Decided: December 5, 2017

R. Judson Scaggs, Jr., Esquire
Ryan D. Stottmann, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899

Michael J. Barrie, Esquire
Stephen M. Ferguson, Esquire
Benesch, Friedlander, Coplan
& Aronoff, LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801

Re: *The HC Companies, Inc. v. Myers Industries, Inc.*
C.A. No. 12671-VCS

Dear Counsel:

This letter opinion addresses The HC Companies, Inc.'s ("HC") motion for partial summary judgment. For the reasons that follow, the motion is granted.

HC purchased a lawn and garden business from Myers Industries, Inc. and MYE Canada Operations Inc. (together, "Myers") in February 2015. Among the assets acquired were equipment and machinery to manufacture plastic pots, flats, trays and other items used to grow and sell plants.[1] The condition of that equipment

---

[1] HC also acquired other assets and rights from Myers, including leasehold interests in manufacturing facilities. Def. Myers Indus. Inc.'s Answer to HC's Compl. ¶ 8; Aff. of

was material to the transaction. Meyers represented and warranted in the Amended and Restated Asset Purchase Agreement (the "Purchase Agreement") that the equipment was in "good condition."[2] This representation and warranty, in turn, was captured within Meyers' indemnification obligation as set forth in the Purchase Agreement. It was also captured, by extension, within the Escrow Agreement[3] that memorialized the $8.6 million in funds the parties set aside in escrow to address post-closing indemnification claims (the "Escrow Property").[4]

The operative agreements set forth a detailed process by which indemnification claims were to be asserted and processed. Relevant here, HC was required to submit its indemnification claims to Myers by written notice. Myers, in turn, retained the right to object to indemnification claims raised by HC so long as it provided a written objection to HC within 10 days of receiving HC's claim notice.

---

Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 1 ("Purchase Agreement") § 2.

[2] Purchase Agreement § 4.08(c).

[3] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 2 ("Escrow Agreement") § 1.3(c)(i).

[4] Purchase Agreement § 4.08(c). The precise amount of the Escrow Property is $8,625,000. *Id.* at Art. I (definition of "Escrow Amount"); Escrow Agreement at Recitals (same).

If Myers failed to provide a timely objection, Myers would be deemed to have "irrevocably waived" the right to contest HC's claim notice.[5]

The transaction closed on February 17, 2015. Shortly thereafter, HC sent an indemnification claim notice to Myers asserting that Myers had breached the Purchase Agreement's representations and warranties because some of the tangible assets it acquired, primarily equipment and machinery, were not in good repair. HC's claim notice demanded almost $8 million of the Escrow Property. Myers timely objected on the ground that HC's claim lacked sufficient detail.

HC sent a second indemnification claim notice in July 2016, this time seeking more than $10 million. Once again, HC claimed that specified pieces of equipment and machinery were not in good condition. Myers did not respond to this notice until several weeks later, outside the 10-day objection period imposed by the agreements. When HC demanded payment because the response was untimely, Myers disagreed and refused to authorize the release of the Escrow Property. This litigation followed.

In its motion for partial summary judgment, HC contends that it is entitled to the Escrow Property based on the clear terms of the parties' contracts because

---

[5] Escrow Agreement § 1.3(c)(i).

Myers' objection to HC's second claim notice was not timely. Myers counters that the first and second claim notices contain the same claim, and thus its objection to HC's first claim notice suffices under the agreements to preserve its rights to contest the claim. Myers also raises other defenses based on the terms of the agreements and equitable estoppel.

The core issue is whether Myers timely objected to HC's second indemnification claim notice. In resolving this issue, the Court need only consider the Purchase Agreement, the Escrow Agreement and the parties' written correspondence. Because I find that Myers did not timely object to HC's second claim notice, I must conclude that it has waived its right to contest HC's claim to the Escrow Property. Accordingly, HC's motion for partial summary judgment must be GRANTED.

## I. Factual Background

I have drawn the facts from the admissions in the pleadings, uncontested facts presented in the parties' submissions and those matters of which the Court may take judicial notice. Unless otherwise indicated, I have determined that the following facts are undisputed.

## A.  The Purchase Agreement

The relevant representations and warranties provision within the Purchase Agreement is Section 4.08(c).[6]  There, Myers represented and warranted that "[a]ll Tangible Personal Property that has a replacement value in excess of $50,000 is in good condition and in [a] state of good maintenance and repair in all material respects."[7]  Section 8.02(a) of the Purchase Agreement provides that Myers will indemnify HC for "any inaccuracy in or breach of any of the representations or warranties of [Myers] contained in this Agreement . . . ."[8]

Section 8.05 governs "Indemnification Procedures," and subsection (c) sets forth the process for making "Direct Claims" against an "Indemnifying Party."[9]  A "Direct Claim" is any claim by an "Indemnified Party" (*i.e.*, HC) against an "Indemnifying Party" (*i.e.*, Myers) "on account of a Loss which does not result from a Third Party Claim."[10]  Section 8.05(c) requires HC to give written notice to Myers

---

[6] Purchase Agreement § 4.08(c).

[7] *Id.*

[8] *Id.* § 8.02(a).

[9] *Id.* § 8.05.  Either party, HC or Myers, could make indemnification claims under the Purchase Agreement and Escrow Agreement for reasons specified in those agreements. Because this decision concerns solely HC's indemnification rights, however, I do not discuss Myers' indemnification rights.

[10] *Id.* § 8.05(c).  "'Losses' means any Liabilities, losses, damages, fines, interest, judgments, awards, settlements, fees, claims, suits, actions, causes of actions, assessments,

within 10 days after HC receives a Direct Claim, but provides that failure to give

prompt notice will not relieve Myers of its indemnification obligations:

> **Direct Claims.** Any claim by an Indemnified Party on account of a Loss which does not result from a Third Party Claim (a "Direct Claim") shall be asserted by the Indemnified Party giving the Indemnifying Party prompt written notice thereof (but in any event, no later than ten (10) business days after the receipt by such Indemnified Party of such Direct Claim). The failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure. Such notice by the Indemnified Party shall describe the Direct Claim in reasonable detail, shall include copies of all material written evidence thereof and shall indicate the estimated amount, if reasonably practicable, of the Loss that has been or may be sustained by the Indemnified Party.[11]

## B. The Escrow Agreement

According to Section 1.3(c)(i) of the Escrow Agreement, once Myers receives

an indemnification claim notice from HC, it has 10 business days to send a written

objection:

> If any Buyer Indemnitee desires to make a claim for indemnification pursuant to the Purchase Agreement that is not addressed by a Joint Written Instruction pursuant to Section 1.3(a)(i) (an "Indemnification Claim"), such Buyer Indemnitee [HC] shall provide written notice of

---

penalties, costs or expenses, including reasonable attorneys' or other professional fees and expenses, but excluding any exemplary or punitive damages except in the case of a third-party claim." *Id.* at Art. I (Definitions).

[11] *Id.* § 8.05(c).

such Indemnification Claim to Sellers [Myers] and the Escrow Agent ("Claim Notice"), specifying in reasonable detail (to the extent known) the nature and dollar amount (estimated, as necessary and to the extent feasible) of the Indemnification Claim. **Upon receipt of an Indemnification Claim, any Seller may contest the Indemnification Claim(s) specified in the Claim Notice (or any portion thereof) by giving the Escrow Agent, the applicable Buyer Indemnitee (to the extent necessary contact information for such Buyer Indemnitee is provided in the Claim Notice) and Buyer written notice of such contest (the "Objection Notice") on or before 5:00 p.m., Dallas, Texas time, on the tenth (10th) Business Day after receipt by the Sellers of such Claim Notice (such period, the "Dispute Period")**, which Objection Notice shall include a statement of the reason or basis of such contest and shall state the amount, if any, of any such Claim that is not in dispute (any disputed Claim shall hereinafter be referred to as a "Disputed Claim").[12]

Section 1.3(c)(i) goes on to state that if Myers does not object within 10 days, then

Myers is deemed to have "irrevocably waived the right to contest" HC's claim:

> **If the Escrow Agent has not received an Objection Notice prior to the expiration of the applicable Dispute Period, the Sellers shall have irrevocably waived the right to contest the distribution of that portion of the Escrow Property specified by the corresponding Claim Notice** and the Escrow Agent shall pay to the Buyer Indemnitee specified in the corresponding Claim Notice the amount set forth in the Claim Notice on or before the fifth (5th) Business Day after the expiration of the Dispute Period.[13]

---

[12] Escrow Agreement § 1.3(c)(i) (emphasis supplied).

[13] *Id.* (emphasis supplied).

### C. The Indemnification Claims

On April 13, 2015, just two months after the transaction closed, HC sent a Claim Notice to Myers (the "First Claim Notice") asserting that Myers had breached Section 4.08(c) of the Purchase Agreement because the equipment and other assets listed in the notice were not in "good condition."[14] The First Claim Notice identified almost $8 million of losses and expressly invoked the procedures set forth in Section 8.05(c) of the Purchase Agreement.[15] Myers sent out its objection on April 24, 2015, in which it stated its position that HC's First Claim Notice lacked sufficient detail.[16] HC responded by notifying the escrow agent of the dispute on May 28, 2015, and instructing the agent not to release the Escrow Property to either party until they resolved their dispute and submitted either a "Joint Written Instruction or Final Decree."[17]

---

[14] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 3 ("First Claim Notice").

[15] *Id.* at 2 ("In total, Buyer has identified $7,916,539 in Losses for which Sellers have agreed to indemnify Buyer pursuant to Section 8.02(a) of the Purchase Agreement.").

[16] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 4 at 2 ("For each and every purported 'deficiency' and 'additional deficiency' referred to in your Letter, you failed to describe it in *any* detail, let alone 'reasonable detail.'") (emphasis in original).

[17] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 5 at 1 ("Until [HC] and [Myers] are able to resolve the Direct Claims referenced in the Notice, [HC] hereby expressly requests that the Escrow Agent retain the full amount of the Escrow Property . . . until receipt of a Joint Written Instruction or a Final Decree . . . , in each case, directing

After Myers objected, the parties utilized the indemnification procedure as a dispute resolution mechanism of sorts. HC hired experts to inspect the equipment with an eye toward addressing Myers' objections regarding the lack of specificity in the First Claim Notice.[18] HC then sent Myers a letter in December 2015, in which it included a settlement demand along with a detailed breakdown of each alleged defective asset and the experts' opinions regarding why the asset was not in "good condition" as warranted.[19] The parties were unable to reach an agreement.

HC sent a second claim notice on July 15, 2016, and Myers received it on July 18, 2016 (the "Second Claim Notice").[20] In the Second Claim Notice, HC identified a number of assets it alleged were not in "good condition" as warranted in Section 4.08 of the Purchase Agreement, and provided detailed charts that listed for each asset the amount of the alleged loss and an explanation of the deficiency.[21] This

---

any disposition thereof. [HC] reserves all of its rights and remedies against [Myers]. Nothing contained in this notice shall preclude [HC] from providing a subsequent notice of any indemnification claim . . . .").

[18] *See* Def. Myers Indus. Inc.'s Answering Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Myers' Answering Br."), Ex. 7.

[19] *Id.*

[20] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 6 ("Second Claim Notice"); Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 8 (stating that Myers' received the Second Claim Notice via FedEx on July 18, 2016).

[21] Second Claim Notice, Ex. A–B.

notice also included the experts' opinions on defects and damages.[22]  In total, HC

claimed over $10 million in losses, well in excess of the $8.6 million in escrow.[23]

Myers did not deliver its written objection until August 12, 2016.[24]  On August 17,

2016, HC advised the escrow agent that HC had not received a timely objection from

Myers and stated its position that Myers, therefore, had "irrevocably waived the right

to contest the distribution of the full amount of the Escrow Property . . . ."[25]

### D.  Procedural History

On August 17, 2016, HC filed its Verified Complaint in this Court for breach

of contract seeking, *inter alia*, the full amount of Escrow Property based on the

claims raised in its Second Claim Notice.  On May 25, 2017, HC filed a motion for

partial summary judgment in which it argues that Myers has waived its right to

contest the Second Claim Notice, and the release of the Escrow Property, because

---

[22] *Id.*

[23] *Id.* at 2 ("[HC] has identified $10,144,445 in Losses related to the Deficiencies for which [Myers] ha[s] agreed to indemnify [HC] pursuant to Section 8.02(a) of the Purchase Agreement.").

[24] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 7.  Myers 10-day objection period expired no later than August 1, 2016.  Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 8.

[25] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 8.

its objection to the Second Claim Notice was not timely. Myers opposes the motion.

This is the Court's decision.

## II. Analysis

As noted, the core issue raised by the motion is whether Myers timely objected to HC's Second Claim Notice. In order to decide that issue, the Court must first determine whether the claim contained in the Second Claim Notice is the same as the claim contained in the First Claim Notice. If the claims are different, then the Escrow Agreement required Myers to send a written objection within 10 days of receiving the Second Claim Notice, which Myers did not do. If the claims are the same, then Myers' original objection to the First Claim Notice, timely provided, would perfect its objection and require HC to prove its breach of warranty claim on the merits. For reasons discussed below, I find that the two claim notices clearly and unambiguously contain different claims. Thus, Myers' objection to the Second Claim Notice was untimely, it has waived its objections and HC is entitled to the Escrow Property.

### A. Standard Of Review

Under Court of Chancery Rule 56(c), summary judgment is appropriate where "there is no issue as to any material fact and . . . the moving party is entitled to

judgment as a matter of law."[26]  This Court has often observed that "[w]hen the issue before the Court involves the interpretation of a contract, summary judgment is appropriate only if the contract in question is unambiguous."[27]

Delaware "is more contractarian than . . . many other states."[28]  With this in mind, our courts have recognized that "[p]arties have a right to enter into good and bad contracts, the law enforces both."[29]  "The presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations."[30]

After carefully reviewing the operative provisions of the contracts at issue here, I am satisfied they are clear and unambiguous.[31]   Thus, the Court's task is to construe and enforce the contracts as written.

---

[26] Ct. Ch. R. 56(c).

[27] *United Rentals, Inc. v. RAM Hldgs.*, 937 A.2d 810, 830 (Del. Ch. 2007).

[28] *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *12 (Del. Ch. July 11, 2011).

[29] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[30] *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch. Nov. 2, 2007).

[31] Myers did not argue in its brief on the motion that the contracts are ambiguous.  At oral argument, however, Myers' counsel made an off-handed comment that the contracts might be subject to two reasonable interpretations.  Tr. of Oral Argument 43:3–8.  It is unclear

### B. Myers Failed To Object On Time

As noted, Myers argues that the First Claim Notice and the Second Claim Notice cover the same claim, and thus its objection to the First Claim Notice is sufficient for the Second Claim Notice. I disagree. Although many of the assets listed in the two notices overlap, the Second Claim Notice identified seventy new Losses as subjects of the claim.[32] It also provided substantially more detail regarding the deficiencies of all the listed assets, along with supporting expert opinions, as the bases of HC's claim that the assets were not in "good condition" as warranted.[33] In many instances, the stated Losses for the individual assets that are listed in both of HC's two Claim Notices differ in amount. For example, the Loss claimed for machine G9 is $27,000 in the First Claim Notice, but is revised to $27,542 for a

---

from this comment whether Myers intended to argue that the agreements are ambiguous. Assuming Myers does seek to press a belated ambiguity argument, I reject it both as untimely and unsustainable. As explained below, the operative provisions are subject to only one reasonable construction. *See Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."); *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. Oct. 22, 2008) ("The determination of whether a contract is ambiguous is a question for the court to resolve as a matter of law.") (citations omitted) (internal quotation marks omitted).

[32] Second Claim Notice, Ex. A.

[33] *Compare* First Claim Notice at Ex. A–B, *with* Second Claim Notice at Ex. A–B.

"software" defect and $17,100 for "clamp end seals/screw" in the Second Claim Notice.[34] The Loss for machine 103 is $8,000 in the First Claim Notice, but is revised to $10,611 for a "color head" repair.[35]

No analytical or perceptual paradigm exists where one could read the First Claim Notice and the Second Claim Notice and then credibly declare that they are the "same notices." Myers' attempt to do just that—to argue that the notices are the same and, therefore, that its objection to the First Claim Notice carried over to the Second Claim Notice—is simply not credible. The differences are manifest on the face of the notices and they are substantive. I am satisfied, therefore, that HC's delivery of the Second Claims Notice triggered Myers' obligation timely to object to that notice under Section 1.3(c)(i) of the Escrow Agreement.[36] It did not do so.

Myers' construction of the agreements as allowing its first and only timely objection to HC's indemnification claim to freeze the Escrow Property as to all future claims finds no support in the language of the contracts and, indeed, runs

---

[34] *Compare* First Claim Notice, Ex. A, *with* Second Claim Notice, Ex. A–B.

[35] *Compare* First Claim Notice, Ex. A, *with* Second Claim Notice, Ex. A–B. As noted, there are upwards of 70 such examples where the Losses stated in the Second Claim Notice differ from those set forth in the First Claim Notice.

[36] While "Direct Claims" are tied to "Losses," Myers' response obligation is tied to its receipt of an "Indemnification Claim" from HC. Purchase Agreement § 8.05(c); Escrow Agreement § 1.3(c)(i).

directly contrary to the clear terms of the Escrow Agreement. Section 1.3(c)(i) provides that Myers was obligated timely to "contest [the] Indemnification **Claim(s)**" and further provides that if it did not do so, it lost the right to "contest the distribution of that portion of the Escrow Property **specified in the corresponding Claim Notice**."[37] This language unambiguously requires that Myers object to claims as made and makes clear that objections raised will be tied to "the corresponding Claim Notice." The language also reveals that the parties anticipated HC might make more than one claim. Thus, Myers' first objection (the only timely objection) was tied to the "corresponding" First Claim Notice and did not carry over to the Second Claim Notice.[38]

---

[37] Escrow Agreement § 1.3(c)(i) (emphasis supplied).

[38] Myers argues that under HC's construction of the Agreements, HC could serially send the same claim notice and pounce on the Escrow Property the moment Myers failed to respond in time to any one of the repeated notices. But that is not what occurred here. As demonstrated above, the two Indemnification Claims stated in their respective notices are clearly different. According to Myers, HC's First Claim Notice lacked detail. HC provided that detail and then asserted substantially more Losses in its Second Claim Notice. Myers' argument, under these circumstances, that it may simply stand on its original objection (that the claim lacked detail) flies in the face of the bargained-for give and take required by the parties' agreements. Moreover, the extreme scenario that Myers envisions would be addressed (and prevented) either by the express terms of the contract (*e.g.*, the "corresponding" language in Section 1.3(c)(i) of the Escrow Agreement) or the implied covenant of good faith and fair dealing. *See, e.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("[The courts] will [] imply contract terms when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.").

Section 1.3(c)(i) of the Escrow Agreement requires Myers to object to HC's claim notices in writing within 10 days after it receives the notice.[39] Myers received HC's Second Claim Notice no later than July 18, 2016, but Myers did not object until August 12, 2016—several days outside of the 10-day window. Thus, the objection was untimely and, absent some other viable legal defense to HC's indemnification claim, Myers has "irrevocably waived the right to contest the distribution of that portion of the Escrow Property specified by the [Second] Claim Notice."[40]

## C. HC's Claim Is Not Barred By Estoppel

Myers sees that other viable legal defense in the law of estoppel. Specifically, Myers argues that HC is estopped from arguing that Myers waived any objection to the Second Claim Notice because HC instructed the escrow agent on two occasions not to release any of the Escrow Property until the parties' dispute was resolved by "Joint Written Instruction or Final Decree."[41] Specifically, HC's instruction to the escrow agent appeared in a letter dated May 28, 2015, following Myers' objection

---

[39] Escrow Agreement § 1.3(c)(i).

[40] *Id.*

[41] *E.g.*, Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 5 at 1.

to the First Claim Notice, and again in the Second Claim Notice.[42]   According to

Myers, by affirmatively stating to the escrow agent that the indemnification dispute

was "subject to final resolution only through Joint Written Instruction or Final

Decree," HC acknowledged that the Escrow Property was subject to a "Disputed

Claim" and thereby relieved Myers of its obligation to object.[43]

Myers bears the burden of proving equitable estoppel by demonstrating that

it: "(i) lacked knowledge or the means of obtaining knowledge of the truth of the

facts in question; (ii) reasonably relied on the conduct of the party against whom

estoppel is claimed; and (iii) suffered a prejudicial change of position as a result of

[its] reliance."[44]   Myers estoppel defense fails as a matter of law because the

undisputed evidence in the summary judgment record reveals that Myers cannot

demonstrate reasonable, detrimental reliance.

---

[42] Second Claim Notice at 2.

[43] Myers' Answering Br. at 21.  According to the Escrow Agreement, an "Indemnification Claim" is treated as a "Disputed Claim" only when Myers sends a "written notice of [] contest" (i.e., an objection notice) to HC and the escrow agent within the 10-day window following HC's claim.  Escrow Agreement § 1.3(c)(i).

[44] *Nevins v. Bryan*, 885 A.2d 233, 249 (Del. Ch. 2005) (citing *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 904 (Del. 1965); *Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990)); *see also VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del. 1998) ("To make out a claim of equitable estoppel, plaintiff must show that he was induced to rely detrimentally on defendant's conduct.").

The analysis must begin with a complete picture of precisely what HC said in its directions to the escrow agent. Myers has cherry picked what it likes in the correspondence but there is more. Following the language Myers relies upon, HC stated in both the May 28 letter and the Second Claim Notice that it "reserves all of its rights and remedies against [Myers]. Nothing contained in this notice shall preclude [HC] from providing a subsequent notice of any additional indemnification claim under any section of the Purchase Agreement . . . ."[45] The Second Claim Notice does not contain the words "Disputed Claim," but does state clearly that HC was seeking in that notice "payment of the full value of the Escrow Property."[46]

Myers could not have reasonably relied on HC's correspondence to the escrow agent in deciding not to send an objection to the Second Claim Notice because HC made it clear that it "reserve[d] its right" to raise "additional indemnification claim[s]" against the Escrow Property in "subsequent notice[s]." When HC delivered its Second Claim Notice, it did just that. Moreover, Myers' conduct reveals that it did not rely on HC's letters in deciding not to send a written objection;

---

[45] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 5 at 1; Second Claim Notice at 2.

[46] Second Claim Notice at 2.

it sent a written objection to the Second Claim Notice on August 12, 2016—after the

10-day window closed.[47]   In the absence of reasonable reliance, Myers' estoppel

argument fails.[48]

### D.  Myers' Untimeliness Argument Is Itself Untimely

Myers disputes that HC's Second Claim Notice was valid in the first place

because HC sent the notice more than 10 days after it received notice of the alleged

equipment defects that gave rise to its claim.  According to Myers, this means the

---

[47] Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 7.  Myers also points to HC's December 2015 settlement overture as yet another statement by HC upon which Myers relied to justify its failure to object to the Second Claim Notice.  While HC did provide additional detail in its settlement letter, it said nothing that would lead Myers reasonably to believe that a second indemnification claim would not be forthcoming or that an objection to that claim would not be necessary.  *See* Myers' Answering Br. at 21, 23; Myers' Answering Br., Ex. 7.

[48] *See Nevins*, 885 A.2d at 249.  Myers' estoppel argument likely fails on the first prong as well.  Myers cannot say that it "lack[ed] knowledge or the means to obtain knowledge of the truth of the facts in question"—the fact in question being that HC may bring a second claim—after it received HC's May 28 letter and the Second Claim Notice in which (in both instances) HC reserved the right to bring additional claims.  *Id.*  Myers was also aware of its obligation to object to HC's claim notice under the Escrow Agreement, as it was a party to the contract, had timely objected to the First Claim Notice and had belatedly objected to the Second Claim Notice.  Aff. of Jason Reed in Support of HC's Mot. for Partial Summ. J., Ex. 5.

Second Claim Notice was untimely under Section 8.05(c) of the Purchase Agreement.[49]

Myers' timing defense to the Second Claim Notice may have carried the day if only Myers had timely raised it.[50] Unfortunately for Myers, any delay by HC under Section 8.05(c) of the Purchase Agreement (assuming there was a delay) did not relieve Myers of its obligation to send a written objection. Section 8.05(c) provides that "**the failure to give such prompt written notice shall not, however, relieve the Indemnifying Party [Myers] of its indemnification obligations**, except and only to the extent that the Indemnifying Party forfeits rights or defenses **by reason of such failure**."[51] Myers has not shown that it forfeited any rights or defenses as a result of HC's delay in submitting the Second Claim Notice, and I can think of no right or defense that Myers would have lost if it had made a timely

---

[49] Purchase Agreement § 8.05(c) (providing that Direct Claims "shall be asserted by [HC] giving [Myers] prompt written notice thereof (but in no event, no later than (10) business days after the receipt of [HC] of such Direct Claim)").

[50] If HC failed to provide timely notice of an indemnification claim, then Myers could have included that failure as a "reason or basis" for contesting HC's claim, as envisioned by the Escrow Agreement. Escrow Agreement § 1.3(c)(i) (providing that Myers' objection notice "shall include a statement of the reason or basis" for Myers objection).

[51] *Id.* (emphasis supplied).

objection. In fact, a timely objection would have preserved Myers' rights and defenses, including its defense that HC's Second Claim Notice was untimely.

Myers does claim that it was prejudiced by HC's delay because it could not make a prompt inspection of the allegedly defective assets listed in the Second Claim Notice.[52] Assuming that is true, that does not amount to a "forfeit[ure]" of rights and defenses captured by the exception in Section 8.05(c).[53] The only reasonable construction of Section 8.05(c) is that HC's delay in sending a claim notice must be the cause of Myers forfeiting rights and defenses.[54] But Myers forfeited its defenses only as a result of its delay in objecting to HC's claim. As stated, Myers could have used HC's delay as part of its defense in arguing that HC was not entitled to indemnification, along with any other arguments it might muster in defense of the claim on the merits. According to the plain language of the Purchase Agreement

---

[52] As an aside, I note that Myers' argument that the Second Claims Notice did not provide it with adequate, timely notice of the claimed loss is inconsistent with its argument that the First and Second Claim Notices are the same notices. *See* Myers' Answering Br. at 19–20 (defending on the basis that HC was "resubmitting notice of the same claim"); *id.* at 26–27 ("HC's delay between alleged discovery and notice to Myers has prevented Myers from defending against HC's substantive deficiency claims.").

[53] Purchase Agreement § 8.05(c).

[54] *Id.* ("[T]he failure to give such prompt written notice shall not, however, relieve the Indemnifying Party [Myers] of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses **by reason of such failure**.") (emphasis supplied).

and the Escrow Agreement, however, Myers is not entitled to raise its defenses unless it objects on time.[55] Myers did not object on time, and thus it cannot challenge HC's Second Claim Notice.[56]

### III. Conclusion

For the reasons discussed above, HC is entitled to the Escrow Property. This may seem like a harsh result, but it is the result dictated by what these two sophisticated parties bargained for.[57] To reiterate, Delaware courts enforce bad deals the same as good deals.[58] The Court cannot rewrite the contracts, and it cannot ignore the plain terms of the contracts. HC's motion for partial summary judgment

---

[55] It appears that the parties structured the indemnification claim procedure in a way that resembles a short statute of limitations period. *See id.*; Escrow Agreement § 1.3(c)(i). The limitations period is the 10-day window following HC's claim notice. If Myers objects within that window, it can then raise any and all defenses it possesses. But if Myers' fails to object within the window, it is time-barred from raising any defenses. This scheme reflects an intent to have post-closing indemnification claims addressed promptly and efficiently so that the Escrow Property, a percentage of the funds Myers paid to HC as consideration, will either be paid out to the seller as contemplated to round out the purchase price, or to the buyer, if needed, to cover indemnifiable losses, all within the 18 months post-closing allowed for indemnification claims. *See* Purchase Agreement § 8.01 (providing that indemnification claims survive for only 18 months after closing).

[56] Specifically, the Court's ruling pertains to HC's claim for the Escrow Property. The Court expresses no opinion as to whether Myers' failure to object on time affects its rights to defend HC claims for amounts in excess of the Escrow Property.

[57] *See W. Willow-Bay Ct.*, 2007 WL 3317551, at *9.

[58] *Nemec*, 991 A.2d at 1125.

is GRANTED.  HC shall submit an implementing order on notice to Myers within

ten (10) days.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*